<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CORDELIO VALENTINO MORRISON, : | Civil Action No. 12-4649 (PGS) |
| Petitioner, : |  |
| : |  |
| v. : |  |
| : |  |
| BRIAN ELWOOD et al., : | **<u>MEMORANDUM OPINION</u>** |
| : | **<u>AND ORDER</u>** |
| Respondents. : |  |

**Sheridan**, District Judge:

    This matter comes before the Court upon Petitioner's filing of four letters, <u>see</u> Docket Entries Nos. 18, 20, 21 and 22, and it appearing that:

1. Petitioner is a native and citizen of Costa Rica who, during the period from 1989 to 2007, was present in the United States and was convicted of: (a) four different controlled substance-related offences; (b) an assault charge; (c) an unlawful imprisonment charge; and (d) a vehicle-related offense. In addition, he was arrested on larceny charges immediately prior to being taken into current immigration enforcement custody. <u>See</u> Docket Entries Nos. 9 and 9-1.

2. Being a pre-removal-order alien detainee, then held pursuant to Section 1226(c), Petitioner commenced the instant matter challenging the Government's classification of him as a §

    1226(c) detainee.[1]  See Docket Entry No. 1.  Petitioner, therefore, sought habeas relief in the form of a hearing before his immigration judge.  See id.

3. Having carefully considered Petitioner's application and Respondents' submissions, this Court: (a) concluded that the Government erred in its classification of Petitioner as a Section 1226(c) detainee; and (b) upon finding that Petitioner should have been deemed a § 1226(a) detainee, granted Petitioner habeas relief by directing Respondents to ensure Petitioner's swift individualized bond hearing before his immigration judge, where the burden would be on the Government.  See Docket Entries Nos. 13 and 14.

4. Respondents duly complied with this Court's order, and Petitioner was provided with a proper bond hearing.  See Docket Entry No. 16 (Respondents' letter informing this Court that Petitioner's individualized bond hearing was held on December 6, 2012, and release on bond was denied).

5. Dissatisfied with the outcome of said bond hearing, Petitioner filed his first letter conceding that he was availed to a bond hearing but: (a) maintaining that the immigration judge erred in finding that Petitioner's

---

[1] Petitioner's position was based on the Government's failure to take him into immigration enforcement custody immediately upon his release from confinement underlying his criminal convictions.

      extensive criminal record warranted denial of release on bond; and (b) asserting that the Government must have failed to meet its burden (since Petitioner remained unconvinced by the judicial decision denying him release on bond). See Docket Entry No. 17. Petitioner, therefore, requested this Court to: (a) annul the findings of his immigration judge; (b) conduct Petitioner's bond hearing de novo; and (c) find that Petitioner was neither a flight risk nor a danger to society. See id.

6. The Court denied Petitioner's application, explaining as follows:

> This Court . . . has no mandate to second-guess a substantive outcome of proceedings held by Petitioner's immigration judge: the entities endowed with the power of appellate review of immigration judges are the Board of Immigration Appeals and the United States Courts of Appeals. This Court's power to entertain habeas applications ensues solely from the narrowly-tailored mandate of 28 U.S.C. § 2241, which -- with respect to the claims raised by pre-removal-order alien detainee's -- allows relief limited to a directive of a bond hearing. Accord Diop v. ICE/Homeland Sec., 656 F.3d 221, (3d Cir. 2011). While a district court itself may hold a bond hearing (instead of directing the Government to arrange for a bond hearing before an immigration judge), such measure appears more appropriate where there is evidence that the immigration judge unnecessarily delays a bond hearing. See e,g., Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455, 474-78 (D. Mass. 2010) (providing an extensive discussion of various versions of such scenario and examining relevant cases law). Paramount here, once an immigration judge reached a decision as to release -- or denial of release -- of an alien detainee upon holding a proper

> individualized bond hearing, a district court has no appellate mandate to annul such decision. Compare Chehazeh v. AG of the United States, 666 F.3d 118 (3d Cir. 2012) (no statutory provision precluded habeas review of a Board of Immigration Appeals' procedural decision to reopen a removal proceeding).

Docket Entry No. 19, at 3 and n.2 (footnoted text incorporated into the main text).

7. In response, Petitioner submitted four letters at bar, which this Court reads jointly and construes as Petitioner's motion seeking reconsideration of the above-quoted Court's order.

    a. In his first letter, Petitioner stated:

> I wish to appeal against the Immigration Judge Page, ruling on the grounds that he violated my constitutional rights to a Fair Hearing. I was granted a habeas Corpus by District Judge Peter G. Sheridan. Judge Sheridan ruled that I was not a threat to society, and my classification was changed from 1226C to 1226A, that I was granted a Bond Hearing where the Government beared the burden of proving why I shouldn't get a bond. The Government failed to take on that burden, and Judge Page took on that burden on him and denied me a bond, on the grounds that I was a threat to the society and a flight risk, because Judge Page made be over turned On October 3rd, 2012 Judge Page order me deported. I request that order be overturned and that I be released.

Docket Entry No. 18 (grammar, punctuation and capitalization in original).

    b. Petitioner's second letter stated:

4

>I would like to file this appeal on the grounds of constitutional and civil rights violations, and I would also like to appeal any decision that Judge Page made against me on the grounds that he showed Prejudice against me.  When I didn't get a constitutional fair bond hearing in his courtroom on the basis that Judge Page showed extreme prejudice, when he didn't allow the Prosecutor to bear the burden instead take that burden upon himself and stated that I was a treat to the society solely on the grounds of one non-violent felony charge and misdemeanor charges, and Judge page stated that I was a flight risk solely on the grounds that he had order me removed, even though that case was on appeal and as a result not a final disposition, Judge page violated my constitutional rights and civil rights and at the time that Judge Page made the decision ordering me to be removed I was wrongly classified, so in light of that I ask that his decision be overturned. I ask for any and every relief that this court can give me in my quest for justice to right the wrong that has been done to me as a result of being incarcerated for over 9 months and held without bond I was wrongly classified and treated like a terrorist and denied a bond or release, on the grounds of a non violent felony and misdemeanor charges I request this court to review my case in it whole and make the right decision in the interest of justice.  . . .  The district court has reviewed my past record and granted my habeas corpus petition and changed my classification so that I am eligible for bond or release but the Immigration Judge Page denied bond on the grounds of my past record of one non-violent felony charge and misdemeanor charges.

Docket Entry No. 20 (grammar, punctuation and capitalization in original).

c.  In his third letter, Petitioner stated:

> Hope your are in the best of health and everything is fine with you and yours, the nature for this brief letter is just to clarify. This court's possession and the order that was made on the 18th day of December, By the Honorable District Judge Peter G. Sheridan. However, with that said the Judge Order that the Docket Entry No. 17 is denied and terminated or in other words this Habeas action is terminated or not. Or is it just an Order of a new individualized bond hearing.

Docket Entry No. 21 (grammar, punctuation and capitalization in original).

    d.   Petitioner's latest letter made the following request:

> I am requesting copys of three final dispositions and Immigration notice to appear. That is attached to my habeas Corpus petition.

Docket Entry No. 22, at 1 (grammar, punctuation and capitalization in original). This final letter was accompanied by a fee waiver form utilized by the Department of Justice. See id. at 2.

8.   To the extent Petitioner is under the impression that this Court's grant of habeas relief was a finding that Petitioner was not a threat to society and/or not a flight risk, and/or that Petitioner was entitled to release on bond, Petitioner errs. The habeas inquiry presented to this Court was limited to, and only to, the issue of whether the Government's failure to take Petitioner into immigration enforcement custody immediately upon his release from

confinement underlying his criminal convictions rendered Petitioner's classification as § 1226(c) detainee defective (and, hence, the Government was incorrect in its position that Petitioner was not entitled to a bond hearing). See Docket Entries 1, 13 and 14. Resolving that particular issue, this Court ruled in Petitioner's favor. See Docket Entries Nos. 13 and 14. The Court's determination resulted in Petitioner's reclassification into a § 1226(a) detainee and, correspondingly, in Petitioner was allowed to have a bond hearing. See id. At no point, however, did this Court rule that Petitioner was entitled to release on bond or that he was not a danger to society, or that he did not present a flight risk: all those issues were reserved for (and resolved at) the bond hearing conducted by his immigration judge. See id.

9. As this Court already explained to Petitioner, this Court has no power of appellate review over the determinations reached by immigration judges: that power is vested solely in the Board of Immigration Appeals and federal circuit courts, such as the United States Courts of Appeals, and the United States Supreme Court. Conceivably, Petitioner might be able to seek relief from this Court (in the form of an order directing a curative bond hearing) if Petitioner establishes that Respondents arranged for a hearing before

an immigration judge who was so biased against Petitioner that Petitioner's bond hearing was effectively a sham, and the underlying habeas remedy Petitioner obtained from this Court was rendered <u>de facto</u> meaningless by such sham hearing.[2]  Here, however, Petitioner fail to assert facts establishing bias on the part of his immigration judge.

10. Within the workings of federal courts, 28 U.S.C. § 455(a) governs the issue of judicial bias and provides that "any justice, judge or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Section 455(a) requires judicial recusal "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" of his/her interest or bias in a case.  <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 860 (1988); <u>In re Kensington Intern. Ltd.</u>, 368

---

[2]  Indeed, this way, it could be argued that Respondents did not avail Petitioner to the very remedy ensuing from this Court's grant of habeas writ. <u>Cf.</u> <u>Akinola v. Weber</u>, 2010 U.S. Dist. LEXIS 5780 (D.N.J. Jan. 26, 2010) (finding that a bond hearing by a district court, rather than an immigration judge, was appropriate where the immigration judge granted excessively numerous and questionably justifiable continuances and adjournments to the government); <u>see also</u> <u>Casas-Castrillon v. Dep't of Homeland Sec.</u>, 535 F.3d 942 (9th Cir. 2008).  "[H]abeas corpus is, at its core, an equitable remedy." <u>Schlup v. Delo</u>, 513 U.S. 298, 319 (1995). The Supreme Court observed that, historically, "common-law habeas corpus was, above all, an adaptable remedy" in which the "court's role was most extensive in cases of pretrial and noncriminal detention." <u>Boumediene v. Bush</u>, 128 S. Ct. 2229, 2267 (2008).

F.3d 289, 301 (3d Cir. 2004).  In making this determination, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." U.S. v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995); accord Clemens v. United States District Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005); Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990). Importantly here, "beliefs or opinions which merit recusal must involve an extrajudicial factor," Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and citation omitted), and the Supreme Court has made it clear that "judicial rulings alone almost never constitute a valid basis" for recusal.  Liteky v. United States, 510 U.S. 540, 555 (1994).  The reason for this rule is that judicial decisions "in and of themselves can only in the rarest of circumstances evidence the degree of favoritism or antagonism required" to prove bias.  Id. Consequently, a judge's prior adverse rulings cannot verify for the bias necessary for recusal under 28 U.S.C. § 455(a). See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001); United States v. Pearson, 203 F.3d 1243, 1277 (10th Cir. 2000); Leslie v. Grupo ICA, 198 F.3d 1152, 1160 (9th Cir. 1999); United States v. Arena, 180 F.3d 380, 398 (2d

Cir. 1999); <u>Matter of Hipp, Inc.</u>, 5 F.3d 109, 116 (5th Cir. 1993). This is true even if the judge consistently made adverse rulings against the party, see <u>McCalden v. California Library Assoc.</u>, 955 F.2d 1214, 1224 (9th Cir. 1990); <u>United States v. Mobile Materials, Inc.</u>, 881 F.2d 866, 877 (10th Cir. 1989), because an adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by the law and facts. See <u>Crenshaw v. Hodgson</u>, 24 F. App'x 619, 621 (7th Cir. 2001) (citing <u>Gleason v. Welborn</u>, 42 F.3d 1107, 1112 (7th Cir. 1994); <u>Byrne</u>, 261 F.3d at 1103). Finally, it should be noted that, where issues of recusal arise, a judge "has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." <u>Laird v. Tatum</u>, 409 U.S. 824, 837 (1972); <u>see also Clemens</u>, 428 F.3d at 1179; <u>Sensley</u>, 385 F.3d at 598-99; <u>Nichols v. Alley</u>, 71 F.3d 347, 351 (10th Cir. 1995).

11. Here, Petitioner merely asserts that: (a) his immigration judge previously ordered Petitioner removed; and (b) his immigration judge has concluded that Petitioner's four different controlled substance-related convictions, one assault conviction, one unlawful imprisonment conviction and one vehicle-related conviction rendered him a danger to society, and that his pattern of aforesaid offenses and his

10

arrest immediately preceding his instant incarceration rendered him a risk of flight. These findings, wholly judicial in nature and based on concrete evidence which Petitioner does not dispute, fail to establish judicial bias rendering this Court's grant of habeas relief meaningless. While Petitioner might have preferred for his immigration judge to allocate different weight or importance to said facts, Petitioner's preference for a favorable outcome cannot operate as evidence of judicial bias.[3] Therefore, all Petitioner's applications (seemingly seeking a curative bond hearing by this Court) are without merit and, being construed jointly as his motion for reconsideration of this Court's prior determination, will be granted in form and denied in substance.[4]

---

[3] This Court is mindful of Petitioner's emotions and his disappointment with the outcome of the bond hearing. However, a litigant's emotions cannot qualify as the requisite extrajudicial factor that could prompt a well-informed, thoughtful and objective observer to conclude that a judge is biased against the disappointed litigant. See Liteky, 510 U.S. at 555; Liljeberg, 486 U.S. at 860 (1988); Kensington, 368 F.3d at 301.

[4] The Court of Appeals has held that a litigant's motion for reconsideration should be deemed "granted" when the court (the decision of which the litigant is seeking a reconsideration of) addresses the merits rather than the mere procedural propriety or lack thereof - of that motion. See Pena-Ruiz v. Solorzano, 2008 U.S. App. LEXIS 12436, at *2-3, n.1 (3d Cir. 2008). However, the very fact of the court's review does not prevent the court performing such reconsideration analysis (of the original application, as supplanted by the points raised in the motion for reconsideration) from reaching a disposition identical - either in its rationale or in its outcome, or in both

12. Finally, being mindful of Petitioner's seemingly limited command of English, as evinced by his above-quoted letters, this Court cannot rule out the possibility that Petitioner wished to appeal the findings of his immigration judge to the Board of Immigration Appeals and/or the United States Courts of Appeals.[5]  Therefore, without expressing any opinion as to procedural propriety and/or substantive validity of Petitioner's appellate challenges, if such were intended, and acting solely out of abundance of caution, the Court will direct the Clerk to serve Petitioner's latest letter, Docket Entry No. 22, and this Memorandum Opinion and Order upon: (a) the Board of Immigration Appeals; and (b) the United States Courts of Appeals for the Third Circuit. IT IS on this <u>18th day of January,</u> 2013,

---

regards - to the court's decision previously reached upon examination of the original application.  <u>See</u> <u>id.</u>

[5]  Petitioner's latest letter made a reference to "Immigration notice to appear."  Docket Entry No. 22, at 1.  This Court cannot rule out the possibility that Petitioner meant to assert his interest in appealing the decision of his immigration judge (since an administrative notice to appear for an immigration proceeding is, seemingly, without any relation to the issues at bar and, in any event, the Clerk of this Court has no access to such document).  The fact that Petitioner's latest letter included an application to proceed without prepayment of fee, <u>see</u> <u>id.</u> at 2, albeit in an administrative matter, seemingly supports the conclusion that Petitioner might have contemplated an appellate action.

ORDERED that the Clerk shall reopen this matter by making a new and separate entry on the docket reading, "CIVIL CASE REOPENED"; and it is further

ORDERED that Petitioner's letters, Docket Entries Nos. 18, 20, 21 and 22, are read jointly and construed as Petitioner's motion seeking reconsideration of this Court's prior order docketed as Docket Entry No. 19; and it is further

ORDERED that Petitioner's motion is granted in form and denied in substance; and it is further

ORDERED that the Clerk shall terminate this matter by making a new and separate entry on the docket reading, "CIVIL CASE TERMINATED"; and it is further

ORDERED that this Court withdraws its jurisdiction over this matter, hence ripening it for appeal if such is desired; and it is further

ORDERED that no further filings shall be made by Petitioner in this matter; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order, together with Petitioner's letter docketed in this action as Docket Entry No. 22, upon the United States Court of Appeals for the Third Circuit and, in addition, upon the Board of Immigration Appeals, accompanying such service with a notation reading, "SERVICE EXECUTED FOR INFORMATIONAL PURPOSES ONLY AND SHALL NOT BE DEEMED A TRANSFER OF THIS MATTER.   PETITIONER'S

ATTACHED LETTER MIGHT BE INDICATIVE OF HIS INTEREST IN COMMENCING EITHER ADMINISTRATIVE OR JUDICIAL APPELLATE PROCEEDINGS.  THIS COURT EXPRESSES NO OPINION AS TO ANY PROCEDURAL OR SUBSTANTIVE ASPECT OF SUCH APPELLATE APPLICATION"; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Respondents by means of electronic delivery and upon Petitioner by regular U.S. mail.


January 18, 2013                    *s/Peter G. Sheridan*
                                    PETER G. SHERIDAN, U.S.D.J.